JACK W. CARPENTER & others *vs.* ZONING BOARD OF APPEALS OF FRAMINGHAM & others.

Middlesex.    December 7, 1966. — February 13, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Zoning,* Swimming pool, Club, Recreational building, "Commercial amusement place." *Swimming Pool. Club. Equity Jurisdiction,* Zoning enforcement. *Words,* "Club," "Recreational building."

A conclusion that in the circumstances a nonprofit corporation named Catalina Swim Club, Inc., organized under G. L. c. 180 to "encourage athletic and recreational activities of all kinds, and to acquire and develop facilities designed to promote the same," was not a bona fide "club" within the meaning of that word in the local zoning by-law was proper where it appeared that the corporation's by-laws permitted the grant of a "temporary membership" in the club to anyone for a fee constituting nothing more than a charge for the use of the pool and contained no limit on the number of members or "criteria or restrictive requirements for admission to membership," that the club solicited prospective members by mail and by radio, that its property was "not owned by the members in common, with control rights and obligations pertinent thereto but . . . [was] owned by those who invested money in" it, and that its members other than its original promoters had no effective means of participating in its management.    [58]

Under the zoning by-law of a town permitting in single residence districts the use of premises for residences, for certain specific purposes of a public or semi-public nature, and for "recreational buildings and grounds," and allowing in business districts "All uses that are permitted in Residence Districts . . . and . . . Theatres, moving picture shows, bowling

alleys, skating rinks, billiard rooms and other commercial amusement places," the use made of the premises of a so called "swim club," organized as a nonprofit enterprise under G. L. c. 180 but operating its swimming pool, locker room, and attendant facilities primarily as a commercial venture rather than as a social venture, was as a "commercial amusement place" and not as a "recreational building and ground" and was not permitted in a single residence district.   [60–61]

In a suit in equity under G. L. c. 40A, § 21, by way of appeal from a decision of a zoning board of appeals upholding the granting of a building permit for a swimming pool, locker room, and attendant facilities in a single residence zoning district, this court, upon determining that the use to be made of the premises was as a commercial venture not permitted under the zoning by-law in such district, directed the entry of a decree annulling the decision of the board of appeals and ordering removal of any such structure erected.   [61]

BILL IN EQUITY filed in the Superior Court on July 23, 1963.

The suit was heard by *Good, J.*

*John M. Kahn* for the plaintiffs.

*William J. McCluskey* for Catalina Swim Club, Inc.

REARDON, J.   This is a bill in equity under G. L. c. 40A, § 21, by way of an appeal from a decision of the zoning board of appeals of Framingham (board) upholding the granting of a building permit to the defendant Catalina Swim Club, Inc. (Catalina) for the construction of a swimming pool, locker room, and attendant facilities in a single residence district in that town.   The plaintiffs, who at the time the bill was brought were homeowners in the immediate vicinity of the locus where the pool was built, complain that the permit was issued in violation of the zoning by-law of the town.   They seek to have the permit declared illegal and void, to enjoin the use of the locus for any nonpermitted purpose, and to require Catalina and the defendant Frank W. Generazio, Jr. to remove the structure already erected on the locus.   The plaintiffs appeal from a final decree of the Superior Court sustaining the decision of the board.

The question presented for our review is whether the defendant Catalina is a "club" or "recreational building and ground" within the meaning of the Framingham zoning by-law allowing such uses in a single residence district.   Part

II, § A, 1, of the by-law provides in substance that premises in single residence districts shall not be used "except for one or more of the following purposes: . . . d. Public and recreational buildings and grounds; schools and hospitals and dormitories accessory thereto; churches or other places of worship; parish houses, clubs, lodges, charitable and welfare institutions; passenger stations; water towers, reservoirs, airports, radio and television towers and stations, and/or like uses not otherwise covered."

1. "The word 'club' has no very definite meaning. Clubs are formed for all sorts of purposes, and there is no uniformity in their constitutions and rules." *Commonwealth* v. *Pomphret,* 137 Mass. 564, 567. A club is generally an association or a corporation comprised of individuals joining together for social intercourse or some other common object. See Annotation, 52 A. L. R. 2d 1098, 1100–1101. Samuel Johnson long ago defined a club as "an assembly of good fellows, meeting under certain conditions." Samuel Johnson, A Dictionary of the English Language (Bohn ed. 1852) p. 211. Our basic inquiry is whether Catalina is a bona fide club with limited membership controlled by the members, into which admission cannot be obtained by any person at his pleasure, and in which the property is actually owned in common or held for the common benefit of the members, "or whether, either the form of . . . [the] club has been adopted for other purposes, with the intention and understanding that the mutual rights and obligations of the members shall not be such as the organization purports to create, or a mere name has been assumed without any real organization behind it." *Commonwealth* v. *Pomphret, supra.* Cf. *Commissioner of Corps. & Taxn.* v. *Chilton Club,* 318 Mass. 285, with *Lerner* v. *Club Wander In, Inc.* 174 F. Supp. 731 (D. Mass.).

The trial judge found "that Catalina is not a bona fide club and therefore it is not an accepted use under the section of the Zoning By-Laws referred to. Catalina's By-Laws are such that they could be applied so that anyone could come in off the street and use the swimming pool.

There appears to be no restriction in this regard so that a 'temporary membership' might be attained by any such individual." Article III, § 4, of Catalina's by-laws provides that "temporary membership" entitling a person to swim could be granted orally by a member of the membership committee, an officer, or the person for the time being in charge of the business of Catalina. In addition, the by-laws, while creating three different classes of membership, in no way limit the number of members allowed in each class, or provide any criteria or restrictive requirements for admission to membership. Limitation on membership was to be determined largely by the physical size of the pool and its capacity to hold human beings. Although, like Judge Aldrich, we do not believe that a club need have "a misanthropic membership committee which peppers the candidates' list with blackballs," we do believe, as does he, "that a mutual relationship of some contemplated permanence . . . [should be] entered into." *Lerner* v. *Club Wander In, Inc., supra,* at p. 732. The fee paid by "temporary members" was nothing more than a charge for the use of the pool. Catalina's solicitation of prospective members by mail and by radio only reinforces this conclusion.

The trial judge also found that Catalina's property "is not owned by the members in common, with control rights and obligations pertinent thereto but is owned by those who invested money in the club at the time it was constructed." On this issue the trial judge concluded "that the word 'club' has been used in an effort to qualify Catalina for this permitted use" under the zoning by-law.

The defendants argue that Catalina's corporate charter is prima facie evidence of its nonbusiness purpose and that the corporate entity holds title to the property for the benefit of its members. Catalina was organized as a nonprofit corporation under G. L. c. 180 "[t]o encourage athletic and recreational activities of all kinds, and to acquire and develop facilities designed to promote the same." Regardless of what may or may not be the proper construction of the word "club," it is obvious that Catalina cannot, merely

by incorporating under c. 180 and by adopting an appropriate corporate title and purpose, thereby create a bona fide club. *Lerner* v. *Club Wander In, Inc.* 174 F. Supp. 731 (D. Mass.). The provisions of Catalina's by-laws and the course of its financial operations to date justify the conclusion that members other than the promoters had neither a common interest in the underlying assets of Catalina nor an effective means of participating in its management. There were no regular members other than the incorporators at the time the building permit was issued and during the first year of the pool's operation. In addition, neither associate members, who apparently held season memberships, nor temporary members were permitted to vote or otherwise participate in Catalina's management. Even after thirty-eight members were elected, they were not presented with a report of Catalina's first year of operations as required by the by-laws. Furthermore, Catalina's financial records did not fully disclose the financial arrangement existing between Catalina and Catalina Pools of New England, Inc., the company that constructed the pool. The officers of Catalina held virtually the same positions in Catalina Pools of New England, Inc. There was more than sufficient evidence to support the conclusion reached by the court below.

We in no way decide that bona fide swimming clubs do not enjoy the same standing as other private clubs in residential districts under zoning by-laws similar to that adopted by the town of Framingham. See, e.g., *Montgomery County* v. *Merlands Club, Inc.* 202 Md. 279; *Steppler* v. *Board of Adjustment of Radnor Township,* 5 D. & C. (Pa.) 2d 8. We hold only that in the circumstances here presented the trial court was correct in finding that Catalina was not a ''club'' within the meaning of the Framingham zoning by-law.

2. The trial court sustained the decision of the board upholding the issuance of a building permit to Catalina on the ground that Catalina is a ''recreational building and ground'' within the meaning of the by-law. The plaintiffs, however, point to another section of the by-law and claim

that Catalina is a "commercial amusement place" allowable only in specified nonresidence districts of Framingham. Part III, § A, of the town's by-law permits in business districts "[a]ll uses that are permitted in Residence Districts . . . and the following: . . . 4b. Theatres, moving picture shows, bowling alleys, skating rinks, billiard rooms and other commercial amusement places." They argue that the commercial nature of the pool as evidenced by the indiscriminate admission of "temporary members," the solicitation of patrons by mass media, charges to patrons apportioned according to their use of the pool, together with other aspects of the pool's operation, require the conclusion that the pool is properly described as a "commercial amusement place" and must be located in a nonresidential district.

We accept, for purposes of discussion, the defendants' contention that the word "public" in Part II, § A, 1 d, of the by-laws does not qualify the words "recreational buildings and grounds," but that each word, "public" and "recreational," permits a distinct category of buildings and grounds within the meaning of the by-law. Such a construction will allow the defendants to prevail if it can be shown that Catalina is either a "public building and ground" or a "recreational building and ground." Given this, the defendants' position is simply that the use of Catalina's premises as a swimming pool would clearly be a "recreational building and ground" and hence would be permitted under the aforementioned by-law.

We do not believe that a proper interpretation of the by-law will support this construction advanced by the defendants. Although the judge found that Catalina's use was not "accompanied by what might be called.a commercial flavor, such as would exist when lights . . . [or] other devices were used to attract persons as they passed by, either on foot or in motor vehicles," it is the use to which the premises are put rather than the external indicia of use which is controlling under the by-law. Framingham Zoning By-Law, Part II, § A, 1. *Hinves* v. *Commissioner of Pub. Works of Fall River,* 342 Mass. 54. *Chicopee* v. *Jakubowski,* 348 Mass. 230.

Carpenter *v*. Zoning Board of Appeals of Framingham.

Recent decisions of this court have distinguished between commercial and noncommercial uses in determining whether a particular use was properly permitted in a residence district.   They control the outcome of this case.   In *Kurz* v. *Board of Appeals of North Reading*, 341 Mass. 110, a case involving the construction of a by-law permitting educational uses in residential areas, it was held that where a dancing school was run as a commercial enterprise for the personal profit of the owner it did not come within the educational use contemplated by the by-law.   See *Chicopee* v. *Jakubowski*, 348 Mass. 230, where the teaching of ceramics for profit was held to be neither a "school" nor an "educational purpose" within the meaning of a zoning by-law.[1]

Catalina cannot escape the effect of its commercial activity by invoking its incorporation as a nonprofit enterprise under G. L. c. 180.   While its charter contains express provision that no part of its net earnings shall inure to the benefit of any member of the corporation, or of any incorporator, officer or other individual, the statute in no way inhibits Catalina from making a profit from its operations or engaging in commercial activities.   *McKay* v. *Morgan Memorial Co-op. Indus. & Stores, Inc.* 272 Mass. 121, 124. *Moran* v. *Plymouth Rubber Co. Mut. Benefit Assn.* 307 Mass. 444, 446.   The evidence which we have reviewed tends to show that the pool's earnings would be applied to a greater or lesser extent to the benefit of the promoters.   From the foregoing recitation of facts and considerations it is evident to us that the commercial aspects of the operation of

---

[1] Other decisions are to the same effect.   This court, in deciding whether a conservatory attached to a house was a "greenhouse," requiring the consent of the building commissioner, or an accessory use not requiring consent, distinguished a structure used "solely for the personal use of the owner" from one which allowed for cultivation on a larger scale and the product of which was "raised for purposes of sale."   *Kenney* v. *Building Commr. of Melrose,* 315 Mass. 291, 295.   *Needham* v. *Winslow Nurseries, Inc.* 330 Mass. 95.   See *Jaffarian* v. *Building Commr. of Somerville,* 275 Mass. 267, 270, where it was held that a miniature golf course was a public amusement subject to the licensing statute despite its "aspects of athletic interest."   See also *Commonwealth* v. *Bow,* 177 Mass. 347 (requiring a merry-go-round to be licensed as a public amusement); *Gruberg* v. *Henry,* 5 Misc. 2d (N. Y.) 223 (children's rides for a fee not permitted in "public parks, playgrounds and recreational areas," but permitted in a business district).

the pool as a private enterprise overrode those which would have made of it primarily a social venture. We conclude that the zoning by-law did not contemplate the operation of such an enterprise as Catalina in a residential zone.

This conclusion is reinforced by Part III, § A, 4 b, of the by-law which restricts "commercial amusement places" to business districts within the town. A fair construction of this section considered with the provisions pertaining to single residence districts indicates an intention that single residence districts should be restricted to residences and certain other specific uses such as hospitals, schools and other public and private buildings, while business districts should in general contain businesses and other commercial ventures. Were we to adopt the construction advanced by the defendants, a majority of the "commercial amusement places," such as bowling alleys, skating rinks, and billiard rooms, could also qualify as "recreational buildings and grounds" in single residence districts. Under this construction the enumeration of "commercial amusement places" in subsection 4 b, would be rendered surplusage since they would already be permitted under the general language in § A of Part III allowing in business districts "[a]ll uses that are permitted in Residence Districts." Such a construction is to be avoided. *Opinion of the Justices,* 275 Mass. 575, 578. *Commissioner of Corps. & Taxn.* v. *Chilton Club,* 318 Mass. 285, 288.

For these reasons we think that Catalina's use of the premises in the manner shown by the evidence constitutes a commercial enterprise within the meaning of "commercial amusement place" under Part III, § A, 4 b, of the zoning by-law.

3. There was error in the ruling that Catalina was a recreational building or ground within the meaning of Part II, § A, 1 d, of the zoning by-law of Framingham. The decree is reversed. A decree is to be entered annulling the decision of the board and requiring the removal of any structure which has been erected upon the premises by Catalina and Generazio.

*So ordered.*