SHOPPERS' WORLD, INC. & others *vs.* BEACON TERRACE REALTY, INC. & another.

Middlesex.   May 1, 1967. — June 30, 1967.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Zoning,* Special permit; Board of appeals: decision, application for special permit, authority of board, grant of special permit.   *Words,* "Fine arts."

A decision of a zoning board of appeals granting a special permit for erection of theatres was not invalid as failing to set forth reasons as required by G. L. c. 40A, § 18, where it was recited in the decision that the board, after taking a view and reviewing the evidence presented to it, concluded that "Due to the fact that . . . [the area in which the theatres were to be located] is already devoted to stores, restaurants, and entertainment facilities . . . the construction of the theatres . . . will not impair the status of the neighborhood."   [67–68]

Upon what was in substance an application to a zoning board of appeals under G. L. c. 40A, § 4, and a provision of the zoning by-law for a special permit to erect a theatre building having two auditoriums, it

was within the board's discretionary powers to allow the applicant to modify the application so as to seek a permit for erection of two buildings, one to be a "legitimate" theatre and the other a motion picture theatre. [68]

A decision of a zoning board of appeals granting a special permit for theatres was not invalid on the alleged ground that a requirement imposed by the board that the applicant "comply with the recommendation of" the planning board respecting ingress and egress was a delegation of the power of the board of appeals to the planning board or showed that a satisfactory arrangement was a necessary condition of the permit where the zoning by-law itself prescribed minimum ingress and egress requirements for different kinds of property and empowered the planning board "to determine the proper classification of all proposals." [69–70]

Certain plans of theatre buildings presented at a hearing by a zoning board of appeals on an application for a special permit for erection of the theatres contained sufficient data so that a requirement of a decision granting the permit, that the buildings conform to the plans, did not invalidate the decision on the alleged ground of "substantial uncertainty" as to the nature of the buildings and the facilities to be contained therein; nor was the decision invalidated by the fact that the board did not retain possession of the plans. [70–71]

In a decision by a zoning board of appeals granting a special permit for a theatre, a restriction imposed by the board, that the theatre should not be used for showing motion pictures except those "of the fine arts type" was not so indefinite as to invalidate the decision. [71]

BILL IN EQUITY filed in the Superior Court on January 11, 1966.

The suit was heard by *Spring, J.*

*Joseph P. Warner* for the plaintiffs.

*John P. Garrahan* (*Carl A. Sheridan* with him) for Beacon Terrace Realty, Inc.; *Joseph H. Lewis,* Town Counsel, for Zoning Board of Appeals of Framingham, also with him.

SPIEGEL, J.   This is an appeal by the plaintiffs from a final decree of the Superior Court that the decision of the defendant board of appeals of the town of Framingham (the board) granting the defendant Beacon Terrace Realty, Inc. (Beacon) a special permit for the construction of a "legitimate theatre" and a "motion picture theatre" did not exceed its authority.   The judge took a view of the area and made "Findings, Rulings and Order," and subsequently adopted the "facts stated in . . . [that] docu-

ment'' as a report of material facts. The evidence is reported.

We summarize the pertinent findings. The plaintiff Shoppers' World, Inc. (Shoppers' World) ''occupies and operates'' a retail shopping center at number One Worcester Road in Framingham under a long term lease from the Equitable Life Assurance Society of the United States. Under the terms of . . . [this] lease . . . Shoppers' World . . . is obligated to pay all local real estate taxes on the . . . property and all other expenses of the care, maintenance and operation of . . . [the] property.''

The plaintiff Turnpike Theatre Corporation (Turnpike) is a wholly owned subsidiary of the plaintiff General Cinema Corporation (General). Turnpike ''occupies property'' in the aforementioned shopping center under a written lease from Shoppers' World. Under the terms of its lease Turnpike is obligated to pay the local real estate taxes applicable to the land and buildings occupied by it and to repay certain construction costs. General is a guarantor of Turnpike's obligations under the lease.

The premises occupied by Shoppers' World and Turnpike ''are in the same zoning district under the provisions of the [z]oning [b]y-[l]aws of the Town of Framingham as the premises of . . . Beacon, which are the subject matter of this . . . [suit]. The distance from the nearest boundary line of . . . Shoppers' World . . . to the nearest boundary line of . . . Beacon is some six hundred sixty (660) to six hundred sixty-six (666) feet across Route 9, a divided State [h]ighway. The nearest point of the site of the proposed uses to the nearest building in 'Shoppers' World' is some 1,700 feet across . . . Route 9. . . . The character of the neighborhood is highly commercial on both sides of Route 9 from Route 126 to Speen Street in Natick. Within the area in question are three . . . large shopping centers containing over eighty-seven . . . commercial stores, ten . . . automobile service and sale businesses,

fourteen . . . restaurants — nine . . . of which are of the nightclub or supper club nature — motels, real estate offices and other similar commercial enterprises. Over four hundred thousand . . . people live within a radius of ten . . . miles from the site in question. . . . Beacon's land consists of approximately twenty-eight . . . acres, with approximately twenty-four . . . acres being within the business district zone and the remaining acres of land within the single residence zone, and having a frontage of some eleven hundred . . . feet on Route 9. There is presently located in the premises of the . . . [defendant] Beacon, within the business zone, a restaurant and a liquor store. There are presently five entrances from the . . . [defendant] Beacon's premises onto Route 9. The area in which the proposed theatres are to be located is a heavily commercial, business and entertainment area adjacent to an extensive modern industrial area.''

We state the pertinent rulings of the judge. Shoppers' World is an aggrieved person within the meaning of G. L. c. 40A, § 21, as amended.[1] ''[T]he [b]oard's action was responsive to the . . . petition and its decision contained a definite statement of rational causes and motives, founded upon adequate findings. . . . [T]he form and language of . . . [the] application [for a building permit] should not limit the [b]oard's power or discretion . . . where it must be denied by the [b]uilding [i]nspector, not because the details of the plan were not acceptable, but because the [z]oning [b]y-[l]aws . . . forbid him to permit construction of any movie theatre.''

''[E]ven if it were the . . . intention [of Beacon] to construct one building with two auditoriums it was within the discretionary power of the . . . [b]oard to permit it to amend its plans so as to provide for two separate buildings. . . . [S]ince only the [b]oard may grant . . . [a special] permit it is incumbent upon the [b]oard to fashion the requirements for an acceptable plan. . . . [W]hile traffic

---

[1] The defendants do not contest this ruling.

congestion could result from the proposed plan specific plans have been formulated, such as ingress and egress lanes and synchronized lights, which could alleviate this problem. . . . [T]he [b]oard's decision is not invalid because [of] Restriction #1 of its decision . . . [which] only partially . . . [commits the board] to the future issuance of an exception. . . . [P]lans were filed as to the ingress and egress lanes and the restriction merely states that the final approval lies in the Planning Board.''

''[I]n an area where there are twenty-one (21) restaurants and, at least, eighty-seven (87) retail stores in addition to other businesses, . . . a movie theatre, fine arts theatre and restaurant complex would not derogate the neighborhood. The type of structure that would be built by . . . Beacon would in no way impair the status of the neighborhood.''

1. The plaintiffs first argue that the board's decision ''is a nullity . . . [because] it does not set forth clearly the . . . reasons for its decision, in accordance with G. L. c. 40A, § 18,'' and that the ''judge's ruling to the contrary is clearly erroneous.'' It is true that this statute is ''not satisfied by a mere repetition of the statutory words'' and that ''there must be set forth in the record substantial facts which rightly can move an impartial mind, acting judicially, to the definite conclusion reached.'' *Prusik* v. *Board of Appeal of Boston,* 262 Mass. 451, 457–458. However, the board's decision in the instant case stated how the matter came before it and reviewed the evidence which was presented to it. It also stated that it had weighed the evidence, taken a view, and concluded that the requested permit should be granted. ''Due to the fact that this area is already devoted to stores, restaurants, and entertainment facilities, it is the decision of the [b]oard that the construction of the theatres as indicated by the petitioner will not impair the status of the neighborhood.'' The board also imposed restrictions in the permit which reflected its concern for the traffic problem. We are of opinion that the

board's decision is sufficient to comply with G. L. c. 40A, § 18.

2. The plaintiffs next contend that the board's "decision is not responsive to the application and appeal of Beacon."

The application for a building permit requested permission for the construction of one building having two auditoriums with seating capacities of 1,800 and 1,000. The board's decision, however, orders the building inspector to issue a permit for the construction of two buildings "of substantially the same size and construction as represented at the public hearing." The decision does not otherwise refer to the seating capacities of the buildings or other details of their construction.

The plaintiffs recognize that "[t]he notice of the appeal and public hearing described the subject matter of the appeal as a petition for an exception in order to construct a building to be used for a theatre and moving picture show." Although the petition of Beacon to the board was, in form, an appeal from the denial by the building inspector of a building permit it was in substance an application for a special permit under a provision of the zoning by-law and the judge correctly so ruled. G. L. c. 40A, §§ 4, 15, cl. 2. Since the application was before the board as an original matter, it was within the board's inherent administrative power to allow Beacon to modify its application so as to conform with the standards of the by-law. See *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 553. Hence, the judge was correct in ruling that the board had discretionary power to permit Beacon to amend its plans so that the board could "fashion the requirements for an acceptable plan"; and that "the form and language of . . . [Beacon's] application should not limit the [b]oard's power or discretion."

The case of *MacGibbon* v. *Board of Appeals of Duxbury,* 347 Mass. 690, relied on by the plaintiffs is not in point. There the board of appeals denied the application for a special permit "to fill and/or excavate" certain land on the

ground that the applicants "have presented no evidence that . . . [their] land could, in fact, be filled and used for residential purposes without constituting a hazard to the health of the community." But the applicants in that case had not asked for permission to use the land for residential purposes. We held that "[i]n so far as the permit is sought for the purpose of filling and excavating land, it ought not to be denied on the basis that the land is unsuitable for residential construction." In addition, the plaintiffs do not appear to contest the regularity of the notice given regarding the proceedings before the board. We believe that in these circumstances their "procedural and substantive rights" have not been "seriously impaired," as they argue. Cf. *Rousseau* v. *Building Inspector of Framingham,* 349 Mass. 31, 35–37.

3. The plaintiffs argue that the "[b]oard made an unauthorized delegation of zoning power to the planning board, or, alternatively, partially committed itself to the future grant of an exception" and thereby exceeded its authority. They refer to the first "restriction" imposed by the board which states, "Over and above the regulations for off-street parking set forth in the [z]oning [b]y-[l]aws . . . the petitioner shall comply with the recommendation of the [p]lanning [b]oard with regard to ingress and egress."

Part IV A of the zoning by-law establishes minimum ingress and egress requirements for off-street parking lots for different classes of buildings. It states, "The [p]lanning [b]oard shall have the power to determine the proper classification of all proposals, except that this power shall not abridge any rights of appeal to the [z]oning [b]oard of [a]ppeals or the [c]ourts by the applicant." This part of the zoning by-law must be complied with whether or not a special permit within the purview of G. L. c. 40A, § 4, is also required. Thus, the imposition of this condition did not amount to a finding that a satisfactory arrangement was a necessary condition of the permit. Cf. *Weld* v. *Board of Appeals of Gloucester,* 345 Mass. 376, 378–379. Nor can

we say that, in these circumstances, the board delegated its power to the planning board. By the terms of the by-law the board did not lose jurisdiction over Beacon. Cf. *Coolidge* v. *Planning Bd. of No. Andover,* 337 Mass. 648. General Laws c. 40A, § 4, allows special permits to be granted "subject to appropriate conditions and safeguards." The instant "restriction" was no more than such a condition and safeguard.

. 4. Restriction No. 4 of the board's decision states that the theatre buildings "shall be of substantially the same size and construction as represented at the public hearing." The plaintiffs argue that no more than a general schematic plan was presented to the board, and " [a]t the time of . . . [the] hearing preliminary drawings had not been completed . . . and there was substantial uncertainty as to the construction and design of the proposed buildings and the type and extent of the facilities to be housed therein." They conclude that "this restriction calls for a future decision of substance by the [b]oard with respect to undefined standards" and cite in support of this view, the *Weld* case, *supra*.

In the *Weld* case at p. 378 we said, "We assume that the board may condition the right to operate under a permit presently issued upon the completion of proposed work in accordance with identified plans or other certain standards."

The plaintiffs point out that the documents referred to in the decision were not "placed on file with the [b]oard or in its possession subsequent to the hearing." Although it would have been preferable for the board to retain possession of such documents we do not deem it fatal that it did not. The decision requires the structures to conform to the plans presented and that the condition be complied with whether or not the board retained the plans. Even though the plans may not have contained detailed information, they appear from the record to contain sufficient details to enable the board to determine whether the "general or specific rules" (*Lawrence* v. *Board of Appeals of Lynn,* 336

Mass. 87, 90) for the granting of such permits had been complied with.

5. Restriction No. 5 of the board's decision states that the "legitimate theatre may not be used for the showing of moving pictures except of the fine arts type and these to be shown not more than 25 per cent of the total performance time." The plaintiffs argue that this restriction is "indefinite and practically unenforceable, and therefore its imposition exceeds the authority of the [b]oard."

It is true that the testimony reveals some uncertainty about the definition of a "fine arts" or "art" film. There may be instances in which this restriction will be difficult to apply. Nevertheless, we are not inclined to say that the words "fine arts" or "art" are so indefinite as to render the board's decision a nullity.

6. The plaintiffs finally argue that the judge erred in his rulings on three evidentiary matters relating to traffic conditions on Worcester Road in the vicinity of the proposed theatres. There is no point in discussing these rulings because we are satisfied that the admission of the excluded testimony would have been, at best, cumulative.

*Decree affirmed.*