JOSEPH ZARTARIAN & others[1] *vs.* ISADORE MINKIN & others.

Norfolk. November 4, 1969. — February 6, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Zoning*, Board of Appeals: rules, executive session, record, decision; Special permit. *Waiver*.

A decision of the zoning board of appeals of a town granting a special permit for a convalescent and nursing home within a single residence district, giving a synopsis of the application, a summary of the evidence heard at the public hearing, making findings warranted by the evidence and required by the zoning by-law, and setting out considerations and reasons relating to public health, safety and esthetics, was not invalid for lack of compliance with G. L. c. 40A, § 18, or with a provision of the by-law that the board should make an "investigation" before granting a special permit, or with a rule of the board prescribing an "executive session" at which its clerk should record its exact vote and the reasons for its decision, even though no execu-

---

[1] Several persons allegedly aggrieved by a decision of the board of appeal.

tive session was held, where it appeared that, after each member of the board had reserved his judgment on the night of the hearing pending a view and further consideration and had subsequently telephoned his approval of the petition to the clerk, the decision was signed by each member and filed.  [17–18]

A decision of the zoning board of appeals of a town granting a special permit for the construction and operation of a convalescent and nursing home was not invalid for vagueness of a condition imposed that the home should "not be used wholly or in part for the care of mentally sick persons," or by reason of possible future determinations by the board under conditions imposed that "additional off-street parking space . . . [should] be provided as . . . [might] be deemed necessary" by the board and that it might require "additional screening of parking," or by reason of failure of the plans, in conformity with which the board required the buildings and other improvements to be constructed, to show the course of a brook running through the premises. [18–19]

BILL IN EQUITY filed in the Superior Court on November 4, 1966.

The suit was heard by *Taveira, J.*

*Donald J. Wood* for the plaintiffs.

*Henry D. White* for Isadore Minkin & another (*Harry E. Warren,* for the Board of Appeal of Wellesley, with him).

KIRK, J.  The defendant board of appeal (the board) of Wellesley (the town) granted permission to the defendants Isadore Minkin and his wife to construct and operate, subject to certain conditions, a convalescent and nursing home within a single residence district at 694 Worcester Street (the locus).  Worcester Street is a part of Route 9 as it passes through the town.  The plaintiffs, who own and reside at nearby premises, being aggrieved by the board's decision, appealed to the Superior Court under G. L. c. 40A, § 21. The judge heard evidence, took a view, made a report of material facts and entered a final decree that the board's decision was not in excess of its authority and should not be annulled.  The plaintiffs' appeal from the final decree brings the case to us.

At the outset the plaintiffs contend that, contrary to the conclusion of the judge, the board's decision was invalid because there was a failure to comply, first, with the provisions of G. L. c. 40A, § 18, and second, with its own rules

Zartarian *v.* Minkin.

adopted pursuant to the directive in § 18.[2] We examine this contention with special reference to those aspects not particularly dealt with by the judge in his otherwise commendably clear and complete report of material facts.

The locus is in a single residence district. Section II of the town's zoning by-law enumerates the structures which may be erected and the uses to which land may be put in such a district and further provides that a "[h]ospital, sanitarium, or other medical institution" may be constructed and used "if permission is, in each case, obtained from the Board of Appeal, as hereinafter provided." The qualifying proviso reads: "No permission sought under . . . Section II . . . shall be granted unless the Board of Appeal shall, after investigation . . . make a written finding which shall be filed with its records that the proposed use will not substantially reduce the value of any property within the district, and will not otherwise be injurious, obnoxious, or offensive to the neighborhood."

The rule of the board pertinent to the case reads: "7. At the public hearing the Clerk shall take notes on all important factual information stated; at the executive session, the Clerk shall record the exact vote of the Board and the reasons for either granting or rejecting the appeal or petition. These records shall be incorporated into the 'Decision' which is written by the Clerk and submitted to the lawyer on the Board for his additions and corrections."

The rules of the board, adopted as required under G. L. c. 40A, § 18, obviously pertain to its internal administrative procedures and are designed to insure a record of compliance with the provisions of G. L. c. 40A including "a detailed record of its proceedings." The board's rule 7 provides that certain of these details occurring at the public hearing be noted by the clerk and also be incorporated in the board's decision. The plaintiffs cannot complain of any deficiency

---

[2] Section 18 requires, inter alia, that "The board shall cause to be made a detailed record of its proceedings, showing the vote of each member upon each question . . . and setting forth clearly the reason or reasons for its decisions, and of its other official actions . . . ."

in these respects.  The decision on its face gives a synopsis of the petition, a summary of the evidence heard and received in favor of and against the petition, and the names of those who wrote in opposition.  The plaintiffs argue, however, that there is neither a record of an executive session nor any evidence to warrant a finding that an executive session was held.  The argument is well founded.  It does not follow, however, that the decision must be held invalid.  The statute does not require an "executive session," nor do the rules.  Rule 7 seems to assume that the board, as a deliberative body after a public hearing, in the course of its duty to arrive at a decision will meet for that purpose and thereby provide a record showing "the vote of each member upon each question."  G. L. c. 40A, § 18.  An executive session is a distinct step which in our view is altogether desirable because, apart from record purposes, it tends to insure that each member before casting his vote will have had the benefit of an expression of views from his fellows.

In the instant case the evidence before the judge shows that on the night of the public hearing each member of the board reserved his decision, pending another view and consideration of the locus.  Subsequently each member of the board by telephone told the clerk that he was in favor of the application whereupon the clerk submitted to the lawyer member of the board a draft decision which after revision was signed by all members of the board and filed.[3]  The informality of this procedure inevitably raises uncertainties, invites challenges and needlessly leads to litigation.  These are the consequences which rule 7 was designed to avoid.

We conclude, nevertheless, as did the judge, that the procedure was not so irregular as to invalidate the action of the board.  There was compliance with the statute.  In addition to the summary, already noted, of the proceedings at the public hearing, the decision sets out the considerations and

---

[3] The evidence was that the draft submitted by the clerk to the lawyer member was in the alternative, one denying the petition, the other favoring it. The form denying the petition was struck out, the one favoring the petition was revised, and, as revised, was incorporated in the decision which was signed and filed.

reasons relating to public health and safety and to esthetics which entered into the board's determination. There was substantial compliance with the by-law. The decision contains the statement, required by the by-law and warranted by the evidence, that "the proposed use of the property will not substantially reduce the value of any property within the district, and will not otherwise be injurious, obnoxious, or offensive to the neighborhood." The public hearing and the views taken by the board meet the by-law requirement of an "investigation." To the extent that there was a deviation from the board's rules relating to its internal procedures, it could be deemed to have been permissibly and impliedly "waived" as that term is used in *Coleman* v. *Louison*, 296 Mass. 210, 213. Cf. *Roman Catholic Archbishop of Boston* v. *Board of Appeal of Boston*, 268 Mass. 416, holding that a board cannot waive a rule requiring a definite number of days notice to the public on matters touching the public interest.

In light of the judge's findings we need treat only briefly with other contentions of the plaintiffs. Most of them challenge the legality of certain conditions imposed by the board. The condition (2) that the nursing home "shall not be used wholly or in part for the care of mentally sick persons" is not so vague as to be unenforceable. The conditions (3) that "additional off-street parking space shall be provided as may be deemed necessary" by the board and (4) that "the building and other improvements . . . constructed . . . shall be substantially in conformity with the plans . . . on file . . . with such additional screening of parking as the Board may require" do not run afoul of our holding in *Weld* v. *Board of Appeals of Gloucester*, 345 Mass. 376, 379, where the board issued in effect an advisory opinion on the requisites essential to the granting of a permit in the future. In the case before us the board has granted the permit, subject to termination if the conditions are not met. It did not commit itself to the granting of a permit in the future contingent upon a further determination. Even if, as the plaintiffs further contend, the plans referred to in

condition (4) do not show the course of a brook that runs through the locus, it seems that sufficient details appear to enable the board to determine whether the "general or specific rules" for the granting of such permits were complied with. *Shoppers' World, Inc.* v. *Beacon Terrace Realty, Inc.* 353 Mass. 63, 70–71, citing *Lawrence* v. *Board of Appeals of Lynn,* 336 Mass. 87, 90.

The alleged errors in the judge's rulings on evidence do not merit discussion.

*Decree affirmed.*