WILLIAM D. KISS *vs.* BOARD OF APPEALS OF LONGMEADOW
& others
(and two companion cases[1]).

Hampden.     January 8, 1976. — October 5, 1976.

Present: REARDON, QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Zoning,* Special permit; Club; Spot zoning; Board of Appeals: rules, decision. *Practice, Civil,* Zoning appeal. *Club. Public Board.*

Findings made by a zoning board of appeals were adequate to support its granting of special permits for indoor tennis facilities to be operated by "clubs not conducted for profit" in a residentially-zoned area under a zoning by-law which provided that the board could, subject to appropriate conditions, grant special permits for specified uses, including a "club not conducted for profit," and to support a conclusion that the use permitted by the special permits was within the scope of applicable statutes and the provisions of the by-law. [153-155]
A finding that two tennis clubs constituted "clubs not conducted for profit" within the meaning of that phrase in a town's zoning by-law was proper where it appeared that both clubs would be operated as

---

[1] The parties to the three actions are the following: (a) *First action:* William D. Kiss *vs.* Justin Cohen, Paul Bloom, Rockwell Keeney, Jr., James Pool and Anthony M. Covalli, as members of the board of appeals of Longmeadow, and Leo J. Shapiro, Shephard Cohen and Leo Grillo; (b) *Second action:* Michael Graziano and Robert J. Diamond *vs.* Justin Cohen, Paul Bloom, Rockwell Keeney, Jr., James Pool, Donald B. Webber and Anthony M. Covalli, as members of the board of appeals of Longmeadow, and Philip J. Shine; (c) *Third action:* William D. Kiss *vs.* [Same six members of the board of appeals in the second action above] and Philip J. Shine.

*corporations under G. L. c. 180, that they would lease their space and facilities from the owners of the land, that the owners would not receive any profit from the operation of the clubs other than payment of rent under the leases, that membership in the clubs would be strictly controlled and limited to bona fide members, that the public at large would not be allowed to use the clubs, and that no members, officers, or directors of either club would receive any dividends from the operation of the clubs.* [155-156]

There was no merit to a contention that special permits granted by a town's board of appeals under a zoning by-law constituted spot zoning where the action of the board did not reclassify the land or in any way usurp the legislative power of the town with respect to the uses permitted under the by-law. [156-157]

The provision of G. L. c. 40A, § 18, as amended by St. 1962, c. 203, that each zoning board of appeals should adopt rules and file such rules in the office of the town clerk was directory and not mandatory, and the failure of a board to file its rules with the clerk did not render invalid special permits granted by it. [157-158]

A condition imposed by a town's zoning board of appeals in granting a special permit that building plans and other aspects of the permitted operation be submitted to the town's planning board and the board of appeals for approval prior to the commencement of construction did not constitute an improper delegation of its function to the planning board. [158-159]

The fact that the chairman of a town's zoning board of appeals hearing an application for a special permit, who presided at the hearing but withdrew from all deliberations except to advise members on legal precedents, was a member of a law firm which represented the estate of one of the sellers of the parcel of land under consideration did not render the permit invalid. [159]

THREE CIVIL ACTIONS commenced in the Superior Court, one on August 29, 1974, and two on September 12, 1974.

Upon transfer to the Housing Court of the County of Hampden, the cases were heard by *Greaney,* J.

*Bernard Glazier* (*Dana M. Goldman* with him) for William D. Kiss; *Abraham M. Bussel,* for Michael Graziano & another, also with him.

*Joseph D. Rosenbloom* for Leo J. Shapiro & others.

*Philip J. Shine,* pro se.

QUIRICO, J.    On August 14, 1974, the board of appeals of the town of Longmeadow (board) granted a special permit to Leo J. Shapiro, Shephard Cohen and Leo Grillo (herein collectively referred to as Shapiro) for the use of land in a residence zone for the construction of a building to house an eight court indoor tennis facility to be oper-

ated by the Meadows Racquet Club, a club not conducted for profit. On August 28, 1974, the board granted a special permit to Philip J. Shine (Shine) for the use of another parcel of land in a residence zone for the construction of an eight court indoor tennis facility to be operated by the Longmeadow Racquet Club, Inc., also a club not conducted for profit. The plaintiff William D. Kiss entered separate complaints in the Superior Court appealing the granting of the two special permits, and the plaintiffs Michael Graziano and Robert J. Diamond filed a single complaint in the same court appealing only the granting of the special permit to Shine.[2] Thereafter all three cases were transferred to the Housing Court of the County of Hampden pursuant to G. L. c. 185B, § 22, inserted by St. 1973, c. 591, § 1.

The action involving the Shapiro permit was tried first, and the two actions involving the Shine permit were then tried together in a second trial. Both trials were before the same judge of the Housing Court who then disposed of all three actions by a single decision followed by the entry of a judgment in each of the three actions affirming the decision of the board and dismissing the appeal. The appeals by the plaintiffs in all three actions are now before us for decision. G. L. c. 185B, § 26, inserted by St. 1973, c. 591, § 1. We hold that the judgments entered in these actions in the Housing Court were correct, subject to a minor revision in form.

In accordance with the Massachusetts Rules of Appellate Procedure, the record on appeal in each of these three cases includes the complaint and answer, the judge's findings of fact, conclusions of law, an order for judgment, the final judgment and the appeal therefrom, the exhibits and the transcript of the proceedings. Mass. R. A. P. 8 (a), as amended 367 Mass. 919 (1975). To the extent that

---

[2] All proceedings before the board and the Housing Court took place under the various applicable provisions of G. L. c. 40A, as in existence before the enactment of substantial amendments thereof by St. 1975, c. 808, § 3. All references to c. 40A are therefore to the statute before it was thus amended.

these rules require the parties to reproduce and file any portions of the transcript and exhibits on which they intend to rely, they have not complied therewith. Mass. R. A. P. 8 (b), 18 (a) and (e), 365 Mass. 850, 864 (1974). "The fact that parts of the record are not included in the appendix shall not prevent the parties or the court from relying on such parts; provided that the court may decline to permit the parties to refer to portions of the record omitted from the appendix, unless leave be granted prior to argument." Mass. R. A. P. 18 (a). No such leave was sought or granted.

The trial judge, in his written decision, made careful and detailed findings of subsidiary facts on the basis of which he made further specific conclusions supporting his decision in favor of the applicants for the special permits. He also treated and disposed of a number of legal issues raised at the trial before him. It is sufficient for the purposes of this decision to state that it is our opinion that the evidence supports the subsidiary facts found by the judge, that the subsidiary findings support his ultimate conclusions, and that his subsidiary and ultimate findings are sufficient to support his decision and the judgments for the defendants. No useful purpose would be served by repeating all of the judge's findings and rulings, but a brief summary thereof may be helpful. Facts relating to specific issues will be stated to the extent necessary for the resolution of those issues.

Shapiro's parcel consists of about 15.227 acres of land at the corner of Dwight Road and Converse Street and he has applied for and been granted a special permit by the board to use about 6.843 acres of that land for the eight court indoor tennis facility described above. Shine has contracted to purchase about forty acres of land located on Wolf Swamp Road, and he has applied for and been granted a special permit by the board to use eleven acres of that land for the eight court indoor tennis facility described above. A portion of the Shine application relating to outdoor tennis courts and a swimming pool was denied. All of the land owned or under contract of pur-

chase by the defendants is zoned residence A-2 under the zoning by-law of the town of Longmeadow (town).

Land classified as residence A-2 is in the highest and most restricted residential zone in the town. It permits as of right the use of the land for single family residences and certain uses related thereto, and it also permits as of right the use for a church, religious or denominational educational building, public school, library, museum, park, playground or recreational building, and municipal buildings and facilities. The by-law further provides that the board may in its discretion and in appropriate cases, and subject to appropriate conditions grant special permits for certain specified uses, including use for a "club not conducted for profit." Zoning By-Law, town of Longmeadow, art. IV, § B, cl. 6.2. The by-law does not define the phrase "club not conducted for profit."

Shapiro and Shine each filed an application with the board for a special permit for use of the specified portion of his premises for the construction of tennis and related facilities and for the operation of those facilities by a club, the Shapiro application referring to "a nonprofit making club to be formed," and the Shine application to "a club not conducted for profit." The board scheduled and held a public hearing on the applications as required by G. L. c. 40A, § 4, after notice thereof was duly given as required by G. L. c. 40A, § 17. Both applications were heard at a single hearing which was attended by about 300 persons. The board took the two applications under advisement and later, by separate decisions, granted the two special permits for the indoor tennis facilities and imposed certain "conditions and safeguards" which are reproduced in the margin of this opinion.[3]

---

[3] The "conditions and safeguards" applicable to the Shine special permit are as follows:

"1. This permit shall be effective only for so long as the tennis facility is operated by a corporation organized under Chapter 180 of the General Laws of Massachusetts. (a) in which all operation, management and control of the affairs of the corporation shall be exercised by its members through their duly elected officers and directors and not by the owners or developers of the land or buildings, (b) the facility

After hearing the parties and their witnesses, the judge found, ruled and decided generally that the board had complied with the provisions of G. L. c. 40A, § 4, in its handling of the applications for and the issuance of the special permits, that the facilities covered by the special permits will be operated by clubs incorporated under G. L. c. 180, that the clubs are "clubs not conducted for profit" within the meaning of the zoning by-law, and that "the facilities and their operation will not cause undue traffic, create a noise, or create any other form of pollution or nuisance and that the operation of the clubs will generally

shall be used exclusively by bona fide members and their guests, (c) the facility shall be operated as a non profit club, (d) no salaries shall be paid to officers or directors of the club as such, (e) no dividend, bonus or other remuneration other than rental shall be paid to any general or limited partner or owner or developer of the land or buildings, (f) any excess of receipts over expenditures shall be retained by the club for the benefit of its members.

"2. That the building plans, the facility for off street parking, the buffer areas surrounding the building, the size, type and location of signs and the location of the building on the land shall be approved by a majority vote of the Planning Board and this Zoning Board of Appeals before construction is started.

"3. That the permit shall be effective only for the first building approved and for the first Chapter 180 corporation formed.

"4. That the land and building shall be and remain taxable by the Town of Longmeadow.

"5. That a subdivision approval be granted if required by law.

"6. That the permit shall expire if the buildings are not started within twelve (12) months of the date this decision becomes effective or becomes effective after appeal, if any, whichever is later, and completed within twenty-four (24) months of said date.

"7. That the building be equipped with a security alarm system of the silent type which shall remain connected to a telephone answering service to notify police of any emergency.

"8. That any structure erected on the premises under authority of the permit shall be removed forthwith by the owner of the land on which it stands and at his expense, upon request of the Board of Selectmen if the use authorized by this permit is abandoned in the future, or if any of the above restrictions are violated.

"9. That an additional separate petition be approved and permit granted by the Longmeadow Zoning Board of Appeals before the construction of outdoor tennis, swimming or other facilities."

The "conditions and safeguards" in the Shapiro special permit do not include paragraph 9 quoted above and there is a slight difference in the wording of paragraph 1 quoted above, but that difference has no bearing on the result in this case.

be consistent with the permitted or incidental uses in residential zones."

The plaintiffs in appealing from the judgments against them contend basically that the board exceeded its authority in granting the two special permits and they base that contention on the several grounds which we shall now consider.

1. *Character of proposed use.* The plaintiffs contend that since "[t]here is ... nothing expressly covering the use similar to the *character* of a tennis facility within the zoning by-law" the special permits are invalid. That is not the proper test of validity of such a permit. General Laws c. 40A, § 4, inserted by St. 1954, c. 368, § 2, states, "A zoning ordinance or by-law may provide that exceptions may be allowed to the regulations and restrictions contained therein, which shall be applicable to all of the districts of a particular class and of a character set forth in such ordinance or by-law. Such exceptions shall be in harmony with the general purpose and intent of the ordinance or by-law and may be subject to general or specific rules therein contained. The board of appeals established under section fourteen of such city or town ... may, in appropriate cases and subject to appropriate conditions and safeguards, grant to an applicant a special permit to make use of his land or to erect and maintain buildings or other structures thereon in accordance with such an exception." The board has the power, under G. L. c. 40A, § 15 (2), "[t]o hear and decide applications for special permits for exceptions as provided in section four upon which such board is required to pass."

We have had occasion in a number of our decisions to point out the difference between the granting of a variance on the one hand and the granting of a special permit on the other, to point out the criteria governing the action of a board in granting a special permit, and to emphasize the fact that those criteria are less stringent than those involved in an application for a variance. *Josephs* v. *Board of Appeals of Brookline,* 362 Mass. 290, 291-295 (1972). *Moore* v. *Cataldo,* 356 Mass. 325, 327-328 (1969). *Wrona*

v. *Board of Appeals of Pittsfield,* 338 Mass. 87, 88-90 (1958). *Todd* v. *Board of Appeals of Yarmouth,* 337 Mass. 162, 167-168 (1958). *Lawrence* v. *Board of Appeals of Lynn,* 336 Mass. 87, 89-90 (1957). *Carson* v. *Board of Appeals of Lexington,* 321 Mass. 649, 652-655 (1947). Much of the argument addressed to us on this point seems to go to the wisdom of the board's action in granting the special permits. We may not concern ourselves with the wisdom of that action; we may review only its validity. *Burnham* v. *Board of Appeals of Gloucester,* 333 Mass. 114, 116-117 (1955). *Caruso* v. *Pastan,* 1 Mass. App. Ct. 28, 29-30 (1973). See *Crall* v. *Leominster,* 362 Mass. 95, 100-104 (1972).

In its two decisions the board noted that there was widespread interest in tennis, that a great number of citizens of the town participate in the sport, that there were no indoor facilities therefor in the town, and that public convenience and welfare would be served by the proposed indoor facilities. The board also took note of the nature of the neighborhoods involved and the presence of several other golf, tennis and swimming facilities therein, and concluded as to both applications that "the location of the proposed facility . . . will not tend to impair the status of the neighborhood . . . [and that i]t is the opinion of the Board that the permit will be in harmony with the general purpose and intent of the regulations in the Zoning By-Law." The facts stated in the board's two decisions support the general conclusions quoted or summarized above. The judge later made comparable subsidiary and general findings which were supported by the evidence. This court may not and does not substitute its judgment for those of the board or the judge. The findings were adequate to permit or support a conclusion that the use permitted by the special permits was within the scope of both the applicable statutes and the provisions of the town's zoning by-law.

The decision on this point can be summarized by repeating the following statement from our opinion in *Burnham* v. *Board of Appeals of Gloucester,* 333 Mass. 114, 116

(1955): "Thus the board of appeals created by [G. L. c. 40A, § 14] is authorized to 'hear and decide requests for special permits' and to grant variances in certain circumstances. Where a local legislative body of a city enacts an ordinance permitting motels to be constructed and operated in a single residence district, as here, can a court say that this is in excess of the authority granted by . . . the enabling statute to promote the 'health, safety, convenience, morals or welfare of its inhabitants'? We are of opinion that this question must be answered in the negative."

2. *Club not conducted for profit.* Large parts of the plaintiffs' briefs are devoted to the argument, based on the decision of this court in *Carpenter* v. *Zoning Bd. of Appeals of Framingham,* 352 Mass. 54 (1967), that the two clubs which are to operate the indoor tennis facilities in question, notwithstanding the findings of the board and of the judge to the contrary, are in fact to be operated for profit and therefore do not qualify as clubs "not conducted for profit" within the meaning of the zoning by-law.

We hold that the *Carpenter* case is not controlling in the present cases because the facts found in that case were directly opposite to those found in the present cases. In the *Carpenter* case the trial judge had found that the purported club was "not a bona fide club and therefore it is not an accepted use under the section of the Zoning By-Laws" permitting clubs in a residential district, that the purported club's "By-Laws are such that they could be applied so that anyone could come in off the street and use the swimming pool," and "that the word 'club' has been used in an effort to qualify Catalina for this permitted use" under the zoning by-law. 352 Mass. at 56-57.

In contrast to the *Carpenter* case, the board and the judge in the present cases found that both clubs will be operated as separate corporations under G. L. c. 180, that they will lease their space and facilities from the owners of the land, that the owners will not receive any profit on any count from the operation of the clubs other than the payment of rent under the leases, that membership in the clubs will be strictly controlled and limited to bona

fide members, that the public at large will not be allowed
to use the clubs, and that no members, officers or directors
of the club will receive any dividends from either club's
operation. The findings are supported by the evidence, and
they support the conclusion that the clubs are of the type
contemplated by the zoning by-law when it refers to clubs
"not conducted for profit." There is nothing before us in
these cases which either permits or requires us to assume
that the two clubs which are to conduct the tennis facili-
ties are going to do so in the manner described in the
*Carpenter* case.

3. *Spot zoning.* The plaintiffs contend that the special
permits are invalid because they constitute spot zoning.
There is no merit in this contention. The land involved
was classified for residential uses by legislative action of
the town in either adopting or amending its zoning by-law.
The by-law contemplated that land so classified could be
used for a "club not conducted for profit" if the board, in
its discretion, saw fit to grant a special permit therefor.
The action of the board did not reclassify the land or in
any way amend the by-law with respect to the uses which
were permitted in a residence district. The board did not
usurp the legislative power of the town in granting the
special permits, rather it exercised the discretionary power
which the voters of the town, exercising legislative power
given them by the General Court, expressly delegated to
the board.

There appears to be no judicial precedent in this Com-
monwealth on the question whether the granting of a spe-
cial permit constitutes spot zoning. The prevailing view
elsewhere appears to be that it does not. "A special permit
is granted pursuant to the literal language of the zoning
regulations. It does not, in any sense, effect an amendment
of the zoning ordinance. . . . [A board of appeals] is an
administrative body which may be authorized to exercise
quasi-judicial powers. It employs such powers when it
receives and processes variance applications, and when it
hears and grants or denies applications for special permits.
It is a body without legislative authority. . . . As a special

permit is not an amendment, it cannot constitute spot zoning." 3 R. Anderson, American Law of Zoning § 15.04 (1968). *Jeffery* v. *Planning & Zoning Bd. of Appeals of Greenwich,* 155 Conn. 451, 462 (1967). *Fitzgerald* v. *Board of Review of Newport,* 99 R.I. 221 (1965). *Bruzzi* v. *Board of Appeals of Pawtucket,* 84 R.I. 220 (1956). *Evergreen State Builders, Inc.* v. *Pierce County,* 9 Wash. App. 973 (1973). *Durocher* v. *King County,* 80 Wash. 2d 139 (1972).

4. *Board's failure to file rules.* General Laws c. 40A, § 18, as amended through St. 1971, c. 1018, provides in part: "The board of appeals of each city or town shall adopt rules, not inconsistent with the provisions of the zoning ordinance or by-law of such city or town, for conducting its business and otherwise carrying out the purposes of this chapter, *and shall file a copy of such rules in the office of the city or town clerk*" (emphasis supplied). The judge found that the board in fact had adopted such rules but that they were never filed with the town clerk. He also found that the board had conducted its hearing in accordance with the requirements of G. L. c. 40A and also in accordance with the guidelines, and general or specific rules contained in the zoning by-law. He ruled that the provision in G. L. c. 40A, § 18, that the board's rules be filed with the town clerk was merely directory and not mandatory, relying therefor on the opinion in *Cheney* v. *Coughlin,* 201 Mass. 204, 211 (1909), where we said: "As to a statute imperative in phrase, it has often been held that where it relates only to the time of performance of a duty by a public officer and does not go to the essence of the thing to be done, it is only a regulation for the orderly and convenient conduct of public business and not a condition precedent to the validity of the act done." We quoted that same language in *Cullen* v. *Building Inspector of N. Attleborough,* 353 Mass. 671, 679-680 (1968), in holding that the "ninety day requirement in § 18 [for the filing of the board's decision] did 'not go to the essence of the thing to be done'; it was directory and not mandatory." The same result was reached in *Burwick* v. *Zoning Bd. of Appeals of Worcester,* 1 Mass. App. Ct. 739, 742-743

(1974), where the board not only failed to decide the case within the time provided by § 18, but also failed to adopt any rules. The judge correctly concluded that in the circumstances of the present case the board's failure to file its rules with the town clerk did not render the two special permits in question invalid.[4]

5. *Alleged delegation to planning board.* The plaintiffs contend that by the paragraph numbered 2 of the "conditions and safeguards" imposed by the board on each of the special permits (see note 3 *supra*), the board improperly delegated its function to the planning board and thereby required that there be a further determination of substance, in the future, before the permit can issue, all in alleged violation of our decision in *Weld* v. *Board of Appeals of Gloucester,* 345 Mass. 376 (1963). We do not agree.

The enabling statute, G. L. c. 40A, § 4, expressly authorizes the board to impose "appropriate conditions and safeguards" in the granting of special permits. All of the aspects of the operation sought to be covered or controlled by the paragraph in question are matters for the proper concern of the board in granting such a special permit. The board did not abdicate its powers as it appears to have done in the *Weld* case. It might have been preferable if the board had itself passed on the matters in question, perhaps after consultation with the planning board, if necessary, but without purporting to give the planning board any power of approval or disapproval of the items in question. However, we do not believe that the board has delegated its power or lost its jurisdiction to pass on the matters covered by the paragraph in question. *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dep't of Community Affairs,* 363 Mass. 339, 372-375 (1973). *Zartarian* v. *Minkin,* 357 Mass. 14, 18-19 (1970). *Shoppers' World, Inc.* v. *Beacon Terrace Realty, Inc.,* 353 Mass. 63, 69-70 (1967). See *Potter* v. *Board of Appeals of Mansfield,*

---

[4] Although the plaintiffs appear to have raised the issue of the board's failure to file its decisions within sixty days after the hearing during the trial in the Housing Court, they have not argued that point before this court.

1 Mass. App. Ct. 89, 94-95 (1973). The board's action was not merely an expression of an intent to issue the two special permits at some future date on the occurrence of some contingency; rather the action constituted the grant of the two permits with language which required and compelled the applicants therefor to comply with specified lawful "conditions and safeguards."

6. *Chairman's participation in hearing.* The chairman of the board is a lawyer, and the firm of which he is a member represented the estate of one of the sellers of the Shine parcel. He presided at the board's joint hearing on the Shapiro and Shine applications but did not take part in the discussion of the Shine application. He fully withdrew from all deliberations thereon except for advising members on the legal precedents under consideration. He participated fully in all steps of the proceedings on the Shapiro application and voted in favor of it. The judge found "no evidence to show even a scintilla of attempted influence by the chairman in the matter of the Shine application."

The plaintiff Diamond alone (his coplaintiff Graziano having died) states in his brief: "Although we certainly do not impute misconduct on [the chairman's] part, we wish to make the court aware that [the chairman] did advise the other members of the board on the meaning of legal precedents under consideration. . . . Thus, the other members were fully aware of his feelings and could not have helped but take those feelings into consideration when they voted." Without passing on the wisdom of the chairman's decision to preside over the joint hearing on the two applications and to advise the members of the board on the legal precedents in the circumstances of this case, we hold that his action in doing so does not affect the validity of the permits.

7. *Conclusion.* In each of the three actions a final judgment was entered in the Housing Court affirming the decision of the board in granting the application therein involved "to erect an indoor tennis facility subject to the conditions and safeguards stated therein *and that further,*

*the Plaintiff's Appeal is hereby dismissed"* (emphasis supplied). The judgment in each action properly affirmed the action of the board, but the actions should not have been dismissed. The language italicized above is struck from the final judgment in each case, and as thus revised the judgments are affirmed.

*So ordered.*