The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

A BUSINESS OR BUSINESSES LOCATED AT 2896 WEST 64TH AVENUE, unincorporated Adams County, Colorado, known as Hide–A–Way Spa and/or Hide–A–Way Bath House; Coexco, Inc., d/b/a Hide–A–Way Spa; Lewis Francisco, individually and d/b/a Lewisco Enterprises; and Hide–A–Way Bathhouse, Defendants–Appellants.

No. 98CA0136.

Colorado Court of Appeals, Div. IV.

July 22, 1999.

Certiorari Granted Dec. 6, 1999.

See also, 937 P.2d 873.

Robert S. Grant, District Attorney, Michael J. Milne, Senior Deputy District Attorney, Brighton, Colorado, for Plaintiff–Appellee.

Worstell & Kiesnowski, David L. Worstell, Robert W. Kiesnowski, Jr., Denver, Colorado, for Defendant–Appellant.

Opinion by Judge KAPELKE.

Defendants, Lewis Francisco, Coexco, Inc., and Lewisco Enterprises, who have been involved in the ownership and operation of a business known as the Hide–A–Way Spa (the Spa), appeal the trial court's order granting the People's motion for enforcement of a previously entered cease and desist order and injunction. We affirm.

The Spa is a bath house where nude female attendants provide services to adult male customers. Such services include "finger-tip powder" rubs, saunas, and shared bubble bath or hot tub treatments. Defendant Francisco is a part owner of the property where the Spa business is located and has been the primary operator of the Spa. Defendants claim that the business which was the Spa is now the Phoenix Club, Ltd. (Phoenix Club), which they assert is a private club. They acknowledge that the club provides the same services as were previously offered at the bath house, but contend that the club is not subject to state statutes or the Adams County ordinance regulating nude entertainment establishments.

In March of 1991, the People filed a public nuisance complaint, alleging that the Spa was being operated in violation of county ordinances governing massage parlors and nude entertainment establishments.

Following a bench trial, the trial court held that the Spa was providing nude entertainment in violation of Adams County Ordinance No. 1, and further found that it was a public nuisance. However, the court did not find a violation of the massage parlor ordinance. The court then entered a cease and desist order permanently enjoining the defendants from operating the Spa in a manner inconsistent with Adams County Ordinance No. 1. The court stayed its order pending the exhaustion of defendants' appellate remedies.

In *People v. Business or Businesses Located at 2896 West 64th Avenue*, 937 P.2d 873 (Colo.App.1996), the decision on the appeal from that cease and desist order, a division of this court held that Adams County Ordinance No. 1 was not unconstitutionally vague. The division affirmed the trial court's determination that the Spa was providing nude entertainment and constituted a public nuisance. Thereafter, the supreme court denied certiorari review and the matter was eventually remanded to the trial court.

In July 1997, upon a motion filed by the People, the trial court vacated its previous stay and entered a cease and desist order and permanent injunction prohibiting defendants from providing nude entertainment in violation of the county ordinances.

In August 1997, the People filed a motion for the enforcement of the cease and desist order and injunction, alleging that defendants had continued to operate the Spa in violation of the ordinance.

At the hearing held on that motion and on a contempt citation, defendants argued that the business of the Spa had been restructured, that it was now operating as a private club, and that it was therefore not "open to the public" within the meaning of that term under the State Enabling Act, § 30–15–401(1)(*l*)(I), C.R.S.1998. Defendants asserted that because the Spa had been converted

into a members-only club it was therefore no longer subject to Adams County Ordinance No. 1.

Based on the evidence presented at the hearing, the court concluded that the Spa remained "open to the public" and that its operations continued to be in violation of the cease and desist order and injunction.

For purposes of this appeal, defendants have conceded that the Phoenix Club continues to provide "nude entertainment." Thus, the primary issue on appeal is whether the court erred in holding that the business is "open to the public" and therefore still subject to the statute and ordinances relating to nude entertainment establishments.

### I.

■ At the outset, we reject the People's contention that the Phoenix Club is not a party to this action and therefore lacks standing to prosecute the appeal. Defendants have acknowledged that the Phoenix Club is not a separate entity but rather merely a name under which defendant Francisco is now conducting the Spa business.

### II.

■ Contrary to the contention of defendants, we perceive no error in the trial court's determination that the Phoenix Club was "open to the public" and was thus subject to county regulation.

Section 30–15–401(1)(*l*)(I), which grants authority to county governments to regulate nude entertainment, provides that county commissioners may adopt "reasonable regulations for the operation of establishments *open to the public* in which persons appear in a state of nudity for the purpose of entertaining the patrons of such establishment; except that such regulations shall not be tantamount to complete prohibition of such operation." (emphasis added) Examples of such restrictions, as listed in the statute, include minimum age requirements, limitations on business hours, and restrictions on the location of such establishments with regard to schools, churches, and residential areas.

Adams County Ordinance No. 1 provides that nude entertainment establishments shall not be operated or maintained within 500 feet of any residentially zoned or used property. As pertinent here, the ordinance further provides that:

> These regulations shall apply to any establishment *open to the public* in which persons appear in a state of nudity for the purpose of entertaining the patrons of such establishment . . . . (emphasis added)

The trial court held a hearing to determine whether the Phoenix Club was in fact "open to the public." At the hearing, a detective, who had posed as a customer of the Spa, testified that the name on the outside of the business was "Hide–A–Way Bath House" and that nothing on the exterior of the business indicated that the establishment was a private club. He also testified that, upon entering the business, he was asked whether he was a member of the "club." When he answered in the negative, he was escorted to another room where he was told about the membership services of the club. He did acknowledge that this room had a "members only" sign and recalled being told that he would have to become a member of the club. He was shown a membership application and club charter and was asked to sign or initial the application. He also testified that he was not asked for any identification and that upon his payment of the $5 membership fee he received a membership card that bore the Phoenix Club name and a membership number.

Another detective testified concerning several advertisements that appeared in various Denver area newspapers for the "Hide–A–Way Bath House." The ads indicated that the establishment had been in business at the same location for over 19 years and gave no indication that it was a private club.

Francisco testified about the membership process for the club. He explained that the club required a $5 monthly fee, a $60 annual fee, or a $30 annual fee if paid in advance. Also, he said that a portion of the membership fees was used for donations to organizations such as the American Civil Liberties Union.

According to Francisco, the nature of, and the charges for, the services at the business had not changed since the Spa had begun operating as a club. When asked whether the club members were charged for the services, he conceded that they were and pointed out by analogy that the "Denver Country Club still charges to play golf...."

The Phoenix Club charter provides that:

The purpose of the Club is to support the expression of free speech and the rights of members to express themselves through nude bathing consistent with such self-expression and to further exercise, preserve, expand and protect individual rights guaranteed to them by and through the First Amendment to the Constitution of the United States.

. . . .

In exercise of the aforementioned rights, the purpose of The Phoenix Club Ltd. is to provide luxurious bathing facilities for its members who may share said facilities with female attendants in the nude as they desire, specially recognizing the enjoyable, spiritual and physically cultural benefits of such nude bathing and to avail themselves of the same.

The application form contains this recital: "If you have received a copy of the club charter and agree with its' [sic] content please initial this application and your membership will accord you access to all the club facilities, upon acceptance of this application." Apparently, the decision whether to admit the prospective members of the club was to be made solely by the acting manager who initially meets the customers.

In its findings entered at the conclusion of the hearing, the trial court noted that essentially anyone who had the $5 to pay the membership fee was entitled to membership in the club and that no one was even required to sign the application form –merely initialing it was sufficient. The court pointed out that the club did not keep an active roll of its members; that there were no membership meetings or club activities as such; and that the club did not really provide any services other than those involving a female nude entertainer. Based on its review of the evidence, the court concluded that the so-called club was a "sham," that the facility was in fact "open to the public," and that it continued to operate in violation of county ordinances and the court's previous order.

In this appeal, defendants rely in part on *City of Chicago v. Severini*, 91 Ill.App.3d 38, 46 Ill.Dec. 345, 414 N.E.2d 67 (1980) and *Hendricks v. Kentucky*, 865 S.W.2d 332 (Ky. 1993) to support their contention that the Spa is no longer "open to the public."

In *Severini*, two undercover police officers entered a club known as the "Candy Club" and were told there was a $4 membership fee. Upon payment of the fee, and without showing identification or filling out a membership application, they were given membership cards. The same membership fee was to be paid each time a member returned to the club. The Candy Club, like the Spa here, was a nude entertainment establishment.

The Illinois Court of Appeals rejected the argument that the establishment was a private club. The court noted that membership was open to any individual who was over the age of 21, neatly dressed, willing to pay the $4 membership fee, and not intoxicated. Additionally, the court noted that the club did not maintain membership lists or even record the identity or number of purported members. The court held that the Candy Club was subject to the applicable nude entertainment ordinances.

In *Hendricks v. Commonwealth, supra,* an undercover state trooper entered an establishment called the "Mousetrap Burlesque and Artistic Dance Preservation Society" and was informed he had to pay a $7 temporary membership fee, or a yearly membership fee of $25, which would entitle him to five visits. Thereafter, a member was charged $5 for each additional visit to the Society, which, like the Spa, was a nude entertainment facility. The trooper was given a membership card without even having to reveal his name. The *Hendricks* court rejected the contention that the Society was a private club and held that it was being operated in violation of a city ordinance prohibiting persons from appearing nude in "any public place."

Here, defendants argue that the Phoenix Club possesses those characteristics of a private club that were lacking in *Hendricks* and *Severini*. We disagree and find *Hendricks* and *Severini* supportive of the trial court's conclusion that the Spa remains "open to the public."

In analyzing the defendant's argument, the *Hendricks* court applied the multi-factor test set forth in *United States v. Lansdowne Swim Club,* 713 F.Supp. 785 (E.D.Pa.1989), *aff'd,* 894 F.2d 83 (3rd Cir.1990), for determining whether a club is private or public. Among those pertinent factors are: (1) the genuine selectivity of the group in the admission of its members; (2) the membership's control over the operation of the establishment; (3) the history of the organization; (4) the use of the facilities by non-members; (5) the purpose of the club's existence; (6) whether the club advertises for members; (7) whether the club is a profit or non-profit organization; and (8) the formalities observed by the club.

While the *Lansdowne Swim Club* case involved issues under Title VII of the Civil Rights Act, we find its discussion of relevant factors helpful in addressing defendants' argument in light of the record here.

First, the Phoenix Club is not genuinely selective of its members. The evidence showed that the only qualification for membership was being a man over 21 years of age who was willing to sign or initial the application. There is no investigation of new members and, in fact, no one is even required to show identification or reveal his name. Other club members do not participate in recommending or rejecting new members, nor is there any limit on the number of possible members. Thus, the club lacks the formalities of a truly selective "membership process."

Second, the existing club members have no control over its operation. According to the club charter, the owner of the business—*i.e.* Francisco—establishes the club rules and the amount of membership dues, and has the sole authority to impose sanctions, including forfeiture of membership benefits. The club is operated exclusively by Francisco or his designated management.

Third, the Phoenix Club continues to be operated as a for-profit organization. Its purported predecessor in business, the Hide–A–Way Bath House, provided the same form of adult entertainment. The sole purpose of the purported conversion to a private club format appears to be for the avoidance of the county ordinances.

Fourth, newspaper advertisements describe the "Hide–A–Way Bath House" as being open to the public and in business in the same location for over 19 years. Thus, the business continues to hold itself out as operating under its original name, rather than as the Phoenix Club.

Finally, the formalities of a private club are not being observed. Although, the club does issue membership cards, it does not conduct membership meetings, or apparently even have by-laws. The record does not indicate that the club's members engage in any activity among themselves—the only activities appear to be those conducted with non-members, *i.e.,* the nude female attendants.

In sum, the record supports the trial court's conclusion that defendants' attempt to pass off the Phoenix Club as a private club is a sham and that it is in fact "open to the public." As the United States Supreme Court commented in *Daniel v. Paul,* 395 U.S. 298, 301, 89 S.Ct. 1697, 1699, 23 L.Ed.2d 318, 323 (1969), in describing another "club" purported to be private, the Phoenix Club is "simply a business operated for a profit with none of the attributes of self-government and member-ownership traditionally associated with private clubs."

Finally, based on our conclusion that their business remains "open to the public," we also reject defendants' contention that the county acted beyond its grant of statutory authority in enforcing the nude entertainment ordinance against them.

Judgment affirmed.

Judge RULAND and Judge BRIGGS concur.