(text box: 1) NO. 5-04-0448

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

KNOOB ENTERPRISES, INC., d/b/a )  Appeal from the

THE HOT SPOT and d/b/a HINRG, )  Circuit Court of

)  Williamson County.

Plaintiff-Appellant, )

)

v. )  No. 04-CH-9

)

THE VILLAGE OF COLP, )  Honorable

)  John Speroni,

Defendant-Appellee. )  Judge, presiding.

___________________________________________________________________________

JUSTICE CHAPMAN delivered the opinion of the court:

The plaintiff, Knoob Enterprises, Inc., doing business as HINRG and The Hot Spot, appeals the trial court's judgment finding that The Hot Spot is a public accommodation that permits the consumption of alcoholic liquor on the premises, subject to local regulation pursuant to section 11-42-10.1 of the Illinois Municipal Code (the Municipal Code) (65 ILCS 5/11-42-10.1 (West 2002)).  For the reasons that follow, we affirm.  

I. BACKGROUND

The Board of Trustees of the Village of Colp adopted a liquor code in 2001.  In 2002, the state legislature enacted section 11-42-10.1 of the Municipal Code, which allows municipalities to license and regulate businesses operating as public accommodations that permit the consumption of alcohol on the premises that are not subject to the Illinois Liquor Control Act of 1934 (235 ILCS 5/1-1 
et seq.
 (West 2002)).  The statute defines "public accommodation" as follows: 

"a refreshment, entertainment, or recreation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, or advantages are extended, offered, sold, or otherwise made available to the public."  65 ILCS 5/11-42-10.1 (West 2002). 

Beginning in 2002, the Village of Colp (the Village) enacted ordinances pursuant to section 11-42-10.1, with the intent of regulating establishments open to the public that permit the consumption of alcohol on the premises, 
e.g.
, establishments permitting the public to bring in their own alcoholic beverages.  The Village amended its liquor code over time, and in 2004 it repealed the code and replaced it with a fully amended version.  Section 1-1 of the Village of Colp Ordinance No. 004-2004 defines "public accommodation" as follows:

"a refreshment, entertainment, or recreation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, or advantages are extended, offered, sold, or otherwise made available to the public[] or to individuals by the payment of dues."  Village of Colp Ordinance No. 004-2004, §1-1 (2004).  

The plaintiff, Knoob Enterprises, Inc., is a for-profit corporation doing business in the Village as HINRG (pronounced "high energy") and The Hot Spot under the same roof.  Knoob Enterprises, Inc., operates HINRG as a legally licensed bar in the north end of the building and The Hot Spot as an alleged private club in the south end.  Knoob Enterprises, Inc., opened The Hot Spot and labeled it a private club around the time the Village changed the closing time for bars from 5 a.m. to 2 a.m.  

The Village took the position that The Hot Spot was operating illegally because it had not obtained a license under the operative ordinance at the time (Village of Colp Ordinance No. 008-2002 (2002)) and that it was subject to local regulation because the public could bring and consume alcoholic beverages on the premises.  The owner of The Hot Spot never applied for a Class C license required by ordinance No. 008-2002 because he believed that his club was exempt from the ordinance due to its private membership and nonretail status.  The Village, not having its own police force, asked the Williamson County sheriff's department to enforce its ordinances.  On January 10 and 11, 2004, Knoob Enterprises, Inc., was cited for operating The Hot Spot in violation of ordinance No. 008-2002, after two officers entered the building after 2 a.m. and observed people present and consuming alcoholic beverages at both ends of the establishment.  For reasons not reflected by the record, HINRG was not cited for violating any liquor laws.    

Knoob Enterprises, Inc., initially filed a two-count petition for a temporary restraining order against the Village.  The petition sought equitable relief, including an order declaring certain ordinances invalid and preventing the enforcement of certain provisions therein.  The Village filed a motion to dismiss, which the trial court allowed.  Knoob Enterprises, Inc., then filed a five-count, first-amended complaint seeking a variety of forms of declaratory relief against the Village, challenging the validity of certain ordinances and requesting a judgment declaring that The Hot Spot is a private club and not a public accommodation.  A bench trial was held.  Regarding the issue before us, the trial court concluded that The Hot Spot is a "public accommodation" as defined in section 11-42-10.1 of the Municipal Code and section 1-1 of the Village of Colp Ordinance No. 004-2004 (excluding the language "or to individuals by the payment of dues").  Knoob Enterprises, Inc., appeals this judgment.  

We will not disturb the trial court's judgment following a bench trial unless it is against the manifest weight of the evidence.  We will find a trial court's judgment to be against the manifest weight of the evidence "only when an opposite conclusion is apparent or when its findings appear to be unreasonable, arbitrary, or not based on the evidence."  
Cruthis v. Firstar Bank, N.A.
, 354 Ill. App. 3d 1122, 1134, 822 N.E.2d 454, 465-66 (2004).  Having reviewed the evidence in its entirety, we find that the trial court's judgment on the issue presented is reasonable and supported by the evidence.  The following evidence was adduced at the trial.  

Greg Knoob's Testimony

The record reflects that the owner of HINRG and The Hot Spot is 35-year-old Colp resident Greg Knoob.  Knoob operates both establishments under Knoob Enterprises, Inc., an Illinois, for-profit, subchapter C corporation in good standing.  The corporation was issued state and local liquor licenses to permit HINRG to sell alcohol.  HINRG's hours of operation have changed over the years due to the Village's regulations.  When the Village refused to approve extended hours and required HINRG to close at 2 a.m., Knoob opened The Hot Spot.  Knoob testified that The Hot Spot operates from 2 a.m. until 5 a.m., Friday through Sunday, as a private, bring-your-own-beverage club.  According to Knoob, when HINRG closes at 2 a.m., patrons who are also members of The Hot Spot can walk to the other side of the building and continue to drink.  The purpose of the club is to permit members to socialize and to listen to music.  Knoob owns an establishment similar to The Hot Spot in Centralia, Illinois.  

Knoob maintains one of his five personal residences on the side of the building where The Hot Spot is located.  He can enter his home through a stairwell equipped with a security code, which leads to a balcony.  The Hot Spot can also be accessed from two interior doorways from HINRG.  These doors can be locked.  The Hot Spot is serviced by two portable restrooms on the exterior of the building.  Knoob testified that HINRG customers who are also members of The Hot Spot are permitted to buy alcohol from HINRG before 2 a.m. and to carry it to the other end of the building.  He testified that members of The Hot Spot under the age of 21 are not permitted to bring in or consume alcohol and that underage members are suspended if they are observed drinking alcohol.  Members over the age of 21 may also be suspended for providing alcohol to minors in The Hot Spot.  

When he first opened The Hot Spot, Knoob contacted and selected a small number of people to become members.  Thereafter, he established some criteria.  Members must be at least 18 years of age.  He prefers that they are single, but he has reserved some openings for married persons.  He attempts to maintain a ratio of 60% women to 40% men.  An individual is disqualified from membership if Knoob knows him or her to be a felon or to have been in an altercation in the past.  However, he takes applicants on their word and does not investigate their criminal histories or backgrounds.  

Knoob testified that an interested person must be sponsored by a current member of the club, complete a membership application, and provide a copy of his or her driver's license.  (The membership application in the record requests the applicant's name, address, and phone numbers.  It also asks the reason for the application: "enjoy social atmosphere", "enjoy hip/hop music", "enjoy techno/house/trance music", or "dance music doesn't matter".)  Knoob further testified that upon completing an application, a potential member must visit The Hot Spot three times with his or her sponsor.  Knoob can approve a member on his own "just because", or a member can be approved by three or more board members.  Board members include his father, his brother, and a person named Lynae Stockwell.  

Once approved, a member must pay a $5 annual fee to obtain a membership card.  (The record reflects that the card says "Hot Spot Club" on one side, and it contains a space for the member's name and for an expiration date on the other side.)  Knoob testified that aside from the annual fee, The Hot Spot relies on donations from the members and that he is responsible for collecting them.  There is no testimony in the record regarding the amount of donations given annually; however, Knoob testified that it probably helped pay his salary and helped cover improvements to the building.  He testified that Knoob Enterprises, Inc., made money from HINRG liquor sales to Hot Spot members.  

Knoob testified that he could not provide a statement of an accurate number of members but that there might be 100 to 150 members.  The Hot Spot does not have any bylaws, but regulations have been established.  There is no testimony in the record regarding the content of the regulations or whether Knoob keeps any membership records at all.  

Knoob testified that when the Williamson County sheriff arrived the first time in January of 2004, he was standing in the parking lot and staff members were present in HINRG after 2 a.m. to clean the bar.  According to Knoob, there were no members of The Hot Spot in HINRG after 2 a.m. on January 10.  Knoob testified that on January 11 the doors had been closed at 2 a.m. in HINRG and that the officers asked someone to open the doors so that they could observe the premises.  Knoob did not provide any testimony at the trial regarding who, other than staff, was present in The Hot Spot on the occasions the Williamson County sheriff cited Knoob with the ordinance violations. 

Sergeant Jim Webb's Testimony

Jim Webb, a sergeant with the Williamson County sheriff's department, testified that on the night of January 10, 2004, he drove by The Hot Spot at approximately 2:10 a.m. and observed several cars pulling into the parking lot and employees directing traffic with flashlights.  He returned to the establishment at 2:40 a.m. and found it open for business.  He entered the establishment through the main entrance of the building on the end occupied by HINRG.

Upon entering HINRG, Sergeant Webb observed an employee handling money at the cash register and patrons playing pool in the bar.  He observed people in the bar drinking a variety of beverages.  The interior doors between HINRG and The Hot Spot were open, giving him a view into The Hot Spot, where he observed people dancing, socializing, and consuming alcohol.  People were freely passing through the doors connecting HINRG and The Hot Spot.  He did not observe any coolers or containers customarily used to transport cold beverages in The Hot Spot, nor did he observe anyone present a membership card to any of the employees.  

Deputy Rob Ahne's Testimony

Deputy Rob Ahne testified that he also entered the end of the building occupied by HINRG in the early morning hours of January 10, 2004.  He observed individuals consuming alcohol in both ends of the building and dancing in the end occupied by The Hot Spot.  He described the doors between HINRG and The Hot Spot as "sliding almost like barn doors" and observed that they were open.  He testified that he visited The Hot Spot a second time on January 11, 2004, and found the doors connecting the bar and the club open and individuals drinking alcohol on both ends.  He did not know who had opened the doors.  

Deputy Ahne visited the premises after January 11 on a number of occasions and observed that the doors between HINRG and The Hot Spot had been pulled together but not secured.  He saw people slide the doors open to travel between the two sections.  He did not recall observing anyone selling or serving alcohol in HINRG after 2 a.m. on these occasions. 

II. ANALYSIS

The sole issue before us is whether the trial court's judgment that The Hot Spot is a "public accommodation", as defined in section 11-42-10.1 of the Municipal Code and section 1-1 of the Village of Colp Ordinance No. 004-2004 (excluding the language "or to individuals by the payment of dues"), is against the manifest weight of the evidence.  In making this determination, we are particularly mindful that Knoob Enterprises, Inc., as the plaintiff in a civil case seeking declaratory relief, bears the burden of demonstrating that The Hot Spot is a private club and not open to the public.  See 
Farmers Automobile Insurance Ass'n v. Gitelson
, 344 Ill. App. 3d 888, 896, 801 N.E.2d 1064, 1071 (2003); see also 
United States v. Lansdowne Swim Club
, 713 F. Supp. 785, 795-96 (E.D. Pa. 1989), 
aff'd
, 894 F.2d 83, 85 (3d Cir. 1990).  We affirm because we find that the plaintiff failed to carry its burden to prove that The Hot Spot is a private club and not a "public accommodation" under section 11-42-10.1 of the Municipal Code and section 1-1 of the Village of Colp Ordinance No. 004-2004.  

Section 11-42-10.1 of the Municipal Code, providing municipalities with authority to license or regulate public accommodations permitting the consumption of alcohol on the premises, was enacted in 2002.  65 ILCS 5/11-42-10.1 (West 2002).  Legislative debate on House Bill 4188 reflects that the bill was proposed in response to several fatalities occurring as a result of people becoming intoxicated at an after-hours, bring-your-own-beverage club.  92d Ill. Gen. Assem., House Proceedings, April 2, 2002.  Given the relatively recent enactment of the statute, there are no reported cases interpreting it, and the issue before us is one of first impression.  Surprisingly, there is very little case law elsewhere on the precise matter before us.  Many cases discuss whether a club is private or subject to regulation as a public accommodation under Title II of the Civil Rights Act of 1964 (42 U.S.C. §2000a (2000)) or under various states' human rights statutes.  Other cases address the matter in the context of ordinance violations or challenges thereto.  See, 
e.g.
, 
Daniel v. Paul
, 395 U.S. 298, 23 L. Ed. 2d 318, 89 S. Ct. 1697 (1969); 
Wright v. Cork Club
, 315 F. Supp. 1143 (S.D. Tex. 1970); 
City of Chicago v. Severini
, 91 Ill. App. 3d 38, 414 N.E.2d 67 (1980); 
United States v. Lansdowne Swim Club
, 713 F. Supp. 785 (E.D. Pa. 1989); 
Hendricks v. Commonwealth
, 865 S.W.2d 332 (Ky. 1993); 
People v. Business or Businesses Located at 2896 West 64th Avenue
, 989 P.2d 235 (Colo. App. 1999).  Despite the different contexts, some of these cases rely on each other for insight into what constitutes a private club.  Our review of these cases reflects that no bright-line test exists for evaluating the private or public status of an entity.  Rather, a multifactor analysis has evolved and been applied in different settings.  We discuss these factors briefly below.

The courts in 
Wright v. Cork Club
, 315 F. Supp. 1143, 1153 (S.D. Tex. 1970), and 
United States v. Lansdowne Swim Club
, 713 F. Supp. 785, 796-97 (E.D. Pa. 1989), enumerated what the 
Wright
 court described as "minimum standards that should be met by any organization" seeking to take advantage of the private club exemption in the Civil Rights Act of 1964 (42 U.S.C. §2000a(e) (2000)).  We combine the factors evaluated in both cases and find that all of them are relevant to the determination before us.  

1. The club uses genuine selectivity in the admission of its members, reflected, in part, by (a) the selection of new members on the basis of some common denominator, (b) a permanent and legitimate system established to screen and investigate applicants for membership, (c) the strict limitation of the use of the club's facilities and services by members only, and (d) the assessment of a fee not indicative of the type charged by a public facility, 
e.g.
, a cover charge.  

2. The membership exercises substantial and meaningful control over the club's operations, reflected by the occurrence of general meetings and an organizational form that permits members to select member officers who direct and manage the organization. 

3. The club does not advertise or publicize its activities, events, services, or facilities to nonmembers. 

4. The club operates solely for the benefit of its members, and not merely for profit or for the benefit of one person or a small group.  

5. The club observes formalities appropriate for its commercial status and adheres to them in practice, 
e.g.
, establishing bylaws, holding meetings, recording minutes, and issuing and tracking membership cards and status.

These cases highlight additional considerations relevant to our inquiry, including the history and the purpose of the club, which are relevant to show whether it was created to avoid the effects of the legislation sought to be enforced.  
Wright v. Cork Club
, 315 F. Supp. 1143, 1152-53 (S.D. Tex. 1970); 
United States v. Lansdowne Swim Club
, 713 F. Supp. 785, 796 (E.D. Pa. 1989).

In 
City of Chicago v. Severini
, 91 Ill. App. 3d 38, 414 N.E.2d 67 (1980), the City of Chicago brought actions against the defendants, who operated a strip club, for violating two city licensing ordinances regulating nude entertainment.  The defendants contended that Candy Club, Inc., was not required to obtain a license because it was not a "public place of amusement" under the Municipal Code of Chicago.  
City of Chicago v. Severini
, 91 Ill. App. 3d 38, 41, 414 N.E.2d 67, 69 (1980).  The court disagreed, finding in part that the absence of bylaws governing the relationship between the club and its members, in addition to the defendants' failure to maintain membership lists or records of the identity or number of the purported members, demonstrated that the club was open to the general public and subject to local nude-entertainment ordinances.  
City of Chicago v. Severini
, 91 Ill. App. 3d 38, 42-43, 414 N.E.2d 67, 70 (1980). 

Two additional cases aid our analysis in the instant case: 
Hendricks v. Commonwealth
, 865 S.W.2d 332 (Ky. 1993) (an appeal from a finding of a violation of a city's nude-dancing ordinance), and 
People v. Business or Businesses Located at 2896 West 64th Avenue
, 989 P.2d 235 (Colo. App. 1999) (an appeal of an injunction granted against a nude bathing spa in a public nuisance action prosecuted by the State of Colorado).  Neither case involved the issue of whether an establishment was a public accommodation or a private club under Title II of the Civil Rights Act of 1964.  Notwithstanding, the courts cited with favor 
Daniel v. Paul
, 395 U.S. 298, 23 L. Ed. 2d 318, 89 S. Ct. 1697 (1969), and 
United States v. Lansdowne Swim Club
, 713 F. Supp. 785 (E.D. Pa. 1989), and applied some form of the multifactor analysis we set forth above.  

In 
Hendricks
, the Kentucky Supreme Court held that the Mousetrap Burlesque and

Artistic Dance Preservation Society (a nude-dancing establishment) was a public club and place of public accommodation and was being operated in violation of a local ordinance prohibiting public nudity.  
Hendricks v. Commonwealth
, 865 S.W.2d 332, 335 (Ky. 1993).  The court addressed some of the factors enumerated in 
Lansdowne Swim Club
, noting that society members had no control over the acceptance of other members.  The court also observed that no evidence had been presented regarding membership control over the operation of the society.  Furthermore, the purpose and the history of the society in 
Hendricks
 demonstrated that it had been "established for the sole purpose of avoiding the requirements of a newly enacted city ordinance regarding nudity in a public place."   
Hendricks v. Commonwealth
, 865 S.W.2d 332, 335 (Ky. 1993). 

The defendants in 
People v. Business or Businesses Located at 2896 West 64th Avenue
, 989 P.2d 235 (Colo. App. 1999), argued that their nude bath spa had been converted to members only and was not subject to a county ordinance banning nude clubs open to the public.  The Colorado Court of Appeals disagreed and found that 
Severini
 and 
Hendricks
 supported the trial court's conclusion that the nude bath spa was open to the public.  
People v. Business or Businesses Located at 2896 West 64th Avenue
, 989 P.2d 235, 237-39 (Colo. App. 1999).  The court reviewed the record before it in light of the factors discussed in 
Lansdowne Swim Club
 and found that the club was not genuinely selective, in part, because anyone over the age of 21 willing to sign an application qualified for membership and because no system for investigating new members existed.  The fact that members did not participate in rejecting applicants also reflected the absence of a selective membership process.  Additionally, the court found that members had no control over the club's operation because the owner established the rules and the amount of the dues and had the sole authority to impose sanctions and forfeitures.  
People v. Business or Businesses Located at 2896 West 64th Avenue
, 989 P.2d 235, 239 (Colo. App. 1999).  

With these factors and other considerations in mind, we turn now to view the evidence put on by Knoob Enterprises, Inc., at the trial in light of the purposes for which the legislature and the Village sought to regulate after-hours, bring-your-own-beverage clubs.  No single factor disposes of the issue before us.  Rather, each factor should be considered and might tip the balance for or against finding that The Hot Spot is a private club.  
Wright v. Cork Club
, 315 F. Supp. 1143, 1150, 1152 (S.D. Tex. 1970); 
United States v. Lansdowne Swim Club
, 713 F. Supp. 785, 796 (E.D. Pa. 1989).  We note, however, that the extent of the selectivity of the membership has been given more weight than the other factors.  
Wright v. Cork Club
, 315 F. Supp. 1143, 1151 (S.D. Tex. 1970).  

Because the statute and the ordinance involved in this case permit the regulation of a "public accommodation", which is defined, in part, as a "facility *** made available to the public", the plaintiff was required to prove, in order to avoid licensure and regulation thereunder, that The Hot Spot is not open to the public.  See 65 ILCS 5/11-42-10.1 (West 2002); Village of Colp Ordinance No. 004-2004, §1-1 (2004).  The plaintiff's evidence falls short of demonstrating that The Hot Spot was not made available to the public.  

First, we find that private club status is not indicated by the evidence because The Hot Spot is not genuinely selective in its membership.  Knoob testified that the purpose of the club was to socialize and to listen to music.  He testified that applicants must be sponsored by current members in order to become members and that membership is open to anyone at least 18 years old who is not a felon and who has not been in an altercation.  He further testified that he, his father, his brother, and a person named Lynae Stockwell could approve or reject membership applications but that he could do so unilaterally "just because".  Knoob testified that upon admission, a member must pay a $5 annual fee and thereafter donate to the club at his or her discretion.  This is insufficient to find that The Hot Spot is genuinely selective in its membership. 

"Selectivity is the essence of a private club."  
Wright v. Cork Club
, 315 F. Supp. 1143, 1151 (S.D. Tex. 1970).  A lack of established criteria for selecting members or the existence of an admission policy without any kind of meaningful investigation of the applicant belies a contention that a group is selective in its membership.  
United States v. Lansdowne Swim Club
, 713 F. Supp. 785, 800 (E.D. Pa. 1989).  We find that for The Hot Spot to be genuinely selective, applications for membership in The Hot Spot should be screened by members pursuant to established criteria, not merely by the board of directors or Knoob individually.  Moreover, where, like here, an applicant is said to be disqualified from membership if he or she is a felon, steps must be taken to investigate an applicant's background or perform a criminal history check to confirm information provided on the application or to the membership.  See 
Wright v. Cork Club
, 315 F. Supp. 1143, 1151 (S.D. Tex. 1970).  Knoob testified that he took applicants on their word that they were not convicted felons, which, in our view, is not a legitimate method of screening or investigation. 

The extent to which nonmembers, or the public at large, are permitted to enter the premises and consume alcohol, socialize, and listen to music therein also assists us in determining whether The Hot Spot is genuinely selective in its membership.  In this case, both Sergeant Webb and Deputy Ahne testified that when they entered the bar after its legal closing time, they observed people on both ends of the building drinking and socializing. People were observed walking between the bar and The Hot Spot freely, and the doors between the two entities were open and not secured.  Sergeant Webb testified that he observed a person handling cash at the register in the bar after the legal closing time.  He did not see any coolers or other type of containers in The Hot Spot of the kind typically used to transport beverages.  He also did not see any patron or "member" display a membership card to enter the facility.  The evidence was sufficient, at the very least, to permit the inference that the south end of the building occupied by The Hot Spot was open to the public.  This is especially true in light of Knoob's failure to provide any testimony at the trial regarding who, other than staff, was present in The Hot Spot on the occasions the Williamson County sheriff cited the plaintiff with the ordinance violations.  Additionally, the record contains no evidence regarding a member's ability to bring a nonmember guest into the club.  For these reasons, the plaintiff failed to carry its burden of demonstrating that The Hot Spot was restricted to private access on the nights it was cited with violating the ordinance.   

We further find that Knoob's testimony regarding an annual fee and membership donations is inadequate to assist us at arriving at any well-reasoned conclusion regarding whether money received from members is indicative of a fee charged by a public facility.  For instance, we do not know how many members donate to the club or how much was donated or how often.  For all of the foregoing reasons, we conclude that The Hot Spot is not genuinely selective in its membership.

Second, the plaintiff also failed to demonstrate that club members participate in club operations.  The record is void of evidence regarding the club holding membership meetings and the extent to which members participate in various aspects of club operations, if at all.  For instance, we do not know whether there are any shareholder members and, if there are, whether they elect other members to the board of directors.  We also do not know whether members have a voice in formulating club policies and regulations.  Knoob testified that there is a board of directors, and he made a vague reference to the existence of a committee. He also testified that he wrote some regulations.  This evidence does not prove that members participate in operating The Hot Spot.  

There is no significant evidence in the record on the third and fourth factors addressed above, so we do not discuss them here.  The evidence is deficient with regard to the fifth factor, however.  Knoob testified that The Hot Spot does not have any bylaws.  Although Knoob does issue membership cards, he could not provide the court with an accurate number of members.  There is no evidence in the record which establishes that The Hot Spot observes any corporate formalities or that the membership policies and regulations are actually enforced and in what manner.  

In short, we do not find a single factor that works in favor of finding that The Hot Spot is a private club.  This conclusion is bolstered by additional considerations relevant to our determination.  The history and the purpose of The Hot Spot are relevant to show whether it was created to avoid the effect of the local ordinances regulating bars and bring-your-own-beverage clubs.  See 
United States v. Lansdowne Swim Club
, 713 F. Supp. 785, 797, 802 (E.D. Pa. 1989); 
Hendricks v. Commonwealth
, 865 S.W.2d 332, 335 (Ky. 1993); 
People v. Business or Businesses Located at 2896 West 64th Avenue
, 989 P.2d 235, 239 (Colo. App. 1999).  The Hot Spot is not unlike any typical tavern–people consume alcohol on the premises, listen to music, dance, and socialize.  Knoob testified that he opened the club around the time the Village declined to approve extended hours of operation for HINRG.  This is strong circumstantial evidence that The Hot Spot was created to assist Knoob in circumventing newly enacted local ordinances.   

For all the foregoing reasons, we conclude that the trial court's judgment finding that The Hot Spot is a public accommodation is not against the manifest weight of the evidence.  In arriving at this conclusion, we have not provided a comprehensive definition of a private club, nor do we maintain that the factors and considerations we evaluated are the only factors warranting review.  The unique circumstances of a given case might support the consideration of additional factors not discussed herein.  

III. CONCLUSION

Accordingly, we affirm the trial court's judgment finding that the plaintiff, Knoob Enterprises, Inc., doing business as HINRG and The Hot Spot, is a "public accommodation" as defined in section 11-42-10.1 of the Municipal Code and section 1-1 of the Village of Colp Ordinance No. 004-2004 (excluding the language "or to individuals by the payment of dues").  

Affirmed.  

DONOVAN, P.J., and WELCH, J., concur.

NO. 5-04-0448

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

KNOOB ENTERPRISES, INC., d/b/a )  Appeal from the

THE HOT SPOT and d/b/a HINRG, )  Circuit Court of

)  Williamson County.

Plaintiff-Appellant, )

)

v. )  No. 04-CH-9

)

THE VILLAGE OF COLP, )  Honorable

)  John Speroni,

Defendant-Appellee. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: June 22, 2005

___________________________________________________________________________________

Justices
: Honorable Melissa A. Chapman, J.

Honorable James K. Donovan, P.J., and

Honorable Thomas M. Welch, J.,

Concur

___________________________________________________________________________________

Attorney
 Alfred E. Sanders, Jr., Sanders & Associates, P.C., 305 South University,

for
 Carbondale, IL 62901

Appellant
 

___________________________________________________________________________________

Attorney
 Patricia S. McMeen, Ridgeway, McMeen & Bleyer, 608 South Park Avenue,

for
 P.O. Box 2082, Herrin, IL 62948

Appellee
 

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 06/22/05.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.